IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-01221-PAB-NRN

STEPHEN J. WOOD,

    Plaintiff,

v.

SHERYL A. KELLEY,
SAFECO INSURANCE COMPANY OF ILLINOIS, and
LIBERTY MUTUAL INSURANCE COMPANY,

    Defendants.

## ORDER

This matter comes before the Court on defendant Safeco Insurance Company of America's Motion to Stay or, in the Alternative, Motion to Dismiss [Docket No. 22] and defendant Sheryl A. Kelley's Motion to Dismiss Plaintiff's Claim for Lack of Personal Jurisdiction or, in the Alternative, Motion to Stay [Docket No. 31]. Plaintiff Stephen J. Wood ("Wood") filed a response to each of the defendants' motions. Docket Nos. 41, 44. Defendant Sheryl A. Kelley ("Kelley") filed a reply. Docket No. 45. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND[1]

This case arises out of a single-car crash that occurred on I-70 outside of Manhattan, Kansas, on April 30, 2018. Docket No. 77 at 4, ¶ 18. Wood, a passenger

---

[1] The Court assumes that the allegations in plaintiff's amended complaint [Docket No. 77] are true in considering the motion to dismiss. *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

in Kelley's car, alleges that Kelley drove above the posted 75 mile-per-hour speed limit and veered off of the highway, hitting two hazards and causing "catastrophic" injuries to Wood.  *Id.* at 6, ¶ 31.  Wood was treated for his injuries both in Kansas and in Colorado.  *Id*. at 8, ¶ 45.  Wood claims that, during his recovery, Kelley badgered, harassed, verbally assaulted, and threatened him, causing him to lose consciousness.  *Id.* at 18–19, ¶¶ 109–14.  Kelley also invaded his privacy and accessed and disseminated his private medical information without permission.  *Id.* at 19, ¶ 115.

Two years later, on April 30, 2020, Wood filed this action as well as a similar complaint in the United States District Court for the District of Kansas, Case No. 20-cv-0222-SAC-KGG (the "Kansas Action").  Docket No. 1; *see also* Kansas Action, Docket No. 1.  Kelley moved to stay the Kansas action, Kansas Action, Docket No. 20, and Wood joined Kelley's Kansas stay request.  Kansas Action, Docket No. 30.  Safeco Insurance Company of Illinois[2] ("Safeco") opposes Wood's stay request in the Kansas action.  Kansas Action, Docket No. 33.  Safeco and Kelley, however, have asked this Court to stay the Colorado action – Safeco under Fed. R. Civ. P. 12(b)(6) and Kelley under Fed. R. Civ. P. Rule 12(b)(2).  Docket Nos. 22 at 9, and 31 at 4.

---

[2] Wood initially named Safeco Insurance Company of America as a defendant.  Docket No. 1.  The parties, however, agreed to replace that entity with Safeco Insurance Company of Illinois.  Docket No. 66 at 1.

2

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION[3]

### A. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure is to determine whether the Court has personal jurisdiction. The plaintiff bears the burden of establishing personal jurisdiction over defendant. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). The plaintiff can satisfy its burden by making a prima facie showing of personal jurisdiction. *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). A court accepts the well-pleaded allegations of the complaint as true to determine whether plaintiff has made a prima facie showing that personal jurisdiction exists. *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). If the presence or absence of personal jurisdiction can be established by reference to the complaint, the court need not look any further. *Id*. The plaintiff, however, may also make this prima facie showing by submitting evidence that, if proven to be true, would support jurisdiction over the defendant. *Dudnikov*, 514 F.3d at 1070. "[A]ny factual disputes in the parties affidavits must be resolved in plaintiffs' favor." *Id*.

In a diversity case, a federal court has personal jurisdiction over a defendant if jurisdiction is consistent with the forum state's long arm statute and if jurisdiction does not violate the due process clause of the Fourteenth Amendment. *Benton v. Cameco*

---

[3] Safeco moved for dismissal under Rule 12(b)(6) "in the alternative" to its motion to stay. Docket No. 22 at 1. Because the Court will grant Safeco's motion to stay, the Court need not consider the alternative motion to dismiss. The Court will, however, consider Kelley's motion to dismiss for lack of personal jurisdiction, Docket No. 31, because resolution of that motion bears on the issue of where this dispute should be litigated.

*Corp.*, 375 F.3d 1070, 1074-75 (10th Cir. 2004).  The Colorado long arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent of the United States Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process under the Fourteenth Amendment.  *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Classic Auto Sales, Inc. v. Shocket*, 832 P.2d 233, 235 (Colo. 1992); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).

Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where those contacts are such that jurisdiction does not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction.  Where general jurisdiction is asserted over a non-resident defendant who has not consented to suit in the forum, minimum contacts exist if the plaintiff demonstrates that the defendant maintains "continuous and systematic general business contacts" in the state.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).  Specific jurisdiction is present where the defendant has purposefully directed its activities at the residents of the forum and the litigation results from injuries that arise out of or relate to those activities.  *Soma Medical Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1298 (10th Cir. 1999).

### B.  Analysis

#### 1.  *General Jurisdiction*

"Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test." *Benton*, 375 F.3d at 1080. General jurisdiction requires that a defendant have contacts with the forum "so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Trujillo v. Williams*, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006).  Courts consider the frequency of a defendant's travel to the forum state, amount of work a defendant performs in the forum state, and whether a defendant owns property in the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Kelley submits a declaration in support of her motion.  Docket No. 31-2.  Kelley states that her contacts with Colorado are "not routine or systematic."  *Id.* at 2, ¶ 4. Rather, "over the last 10 years," she has made "approximately 5 trips to Colorado each year."  *Id.*  Since the accident at issue in this case, Kelley states that she "ha[s] only been to Denver, CO two or maybe three times."  *Id.*  Kelley further states that she resides in and intends to remain in Missouri, that she does not own property in Colorado, has never worked in Colorado, and has no business interests in Colorado. *Id.*, ¶¶ 5–6, 8.  Kelley's visits to Colorado are "strictly personal or for pleasure," and she "consider[s] [her]self to be a tourist when visiting Colorado."  *Id.*, ¶ 9.

Wood does not assert that Kelley works or owns property in Colorado.  Rather Wood characterizes Kelley's contacts with Colorado as "consistent" and claims that, in

5

2015, Kelley's "interest in and contact with Denver increased upon meeting Plaintiff, who resides there." Docket No. 44 at 9. Wood submitted a declaration in support of his response. Docket No. 44-1. Wood states that Kelley "treated Denver as her temporary residence," Docket No. 44 at 9, and that she came to Colorado once every two months between 2015 and 2018. Docket No. 44-1 at 1, ¶ 2. When in Colorado on these "extended stays," Kelley "often temporarily resided in a basement apartment located at her daughter's residence" and left personal belongings in Denver when she returned to Missouri. Docket No. 44 at 3, 9.

The Court finds that Kelley was not "essentially at home" in Colorado. Rather, her actions are too attenuated to rise to the level of continuous and systematic contacts necessary to confer general jurisdiction. *Benton*, 375 F.3d at 1080. Accordingly, Wood has not alleged sufficient facts to establish that the Court's exercise of general jurisdiction over defendant is appropriate.

### b. Specific Jurisdiction

Specific jurisdiction is present only if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court of Calif., San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017). The specific jurisdiction analysis is two-fold. First, the Court must determine whether defendant has such minimum contacts with Colorado that defendant "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Within this inquiry, the Court must determine whether defendant purposefully directed its activities at residents of the forum, *Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 472 (1985), and whether plaintiff's claims arise out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted). Second, if defendant's actions create sufficient minimum contacts, the Court must consider whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice." *Id*. at 113. This latter inquiry requires a determination of whether the Court's exercise of personal jurisdiction over defendant is "reasonable" in light of the circumstances of the case. *Id*.

The mere quantum of contacts between the forum and defendant is not determinative. *Far W. Capital Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995). Instead, the analysis should focus on the quality of the contacts, their significance to the venture, and the overall purpose of the parties' efforts. *Id*. Generally, an individual's contract with an out-of-state party cannot, standing alone, establish sufficient minimum contacts with the forum state. *Burger King*, 471 U.S. at 478. But "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Id*. at 473. To determine whether a non-resident defendant has purposefully established minimum contacts with the forum state by contracting with another party, courts examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties actual course of dealing." *Id*. at 479.

Colorado's long-arm statute provides for personal jurisdiction over defendants

who commit "tortious acts within this state." Colo. Rev. Stat. § 13-1-12(1)(b); *see also Nat'l Bus. Brokers, Ltd. v. Jim Williamson Productions, Inc.*, 115 F. Supp. 2d 1250, 1255 (D. Colo. 2000). In interpreting the statute, the Colorado Supreme Court has held that "it is not necessary that both the tortious conduct constituting the cause and the injury constituting the effect take place in Colorado. Instead, . . . the statute [may be] satisfied when only the resulting injury occurs in the state." *Classic Auto Sales*, 832 P.2d at 235–36. Accordingly, "[a]llegations that a defendant's acts in another state ultimately caused injury in Colorado, and thus constituted a tort here, suffice as a prima facie showing of threshold jurisdiction." *Jenner & Block v. Dist. Court*, 590 P.2d 964, 966–67 (Colo. 1979). In considering a motion to dismiss, "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984).

Wood argues that Kelley has the requisite minimum contacts with Colorado because she purposely directed her activities toward and committed torts against Wood in Colorado. *See, e.g.*, Docket No. 44 at 1–2. Wood claims that Kelley traveled to Denver to maintain close proximity to Wood and that Denver became Kelley's "focal point" for her harm to Wood. *Id.* at 8. For instance, he argues that Kelley kept Wood up "through the night" with her "badgering in Denver," threatened him in an effort to get him to "drop his legal counsel," and "direct[ed] her daughter [in Denver] to issue a threat" to him. *Id.* Wood claims that this caused him "severe emotional distress" and

that, after he tried to cut off contact with her, Kelley "reinitiated harmful contact deliberately directed at [Wood] in Colorado" that caused him harm. *Id.* Wood alleges that "Kelley's actions and the effects thereof occurred both in Kansas and Colorado." Docket No. 77 at 18–19, ¶ 110. Wood also claims that Kelley and her daughter disseminated Wood's private medical information without permission in both Kansas and Colorado. *Id.* at 23, ¶ 140, at 36, ¶ 225. The Court finds that Wood has met his burden of making a prima facie showing of personal jurisdiction with respect to defendant Kelley and will therefore deny Kelley's motion to dismiss.

## III. STAY REQUESTS

Safeco argues that this Court should stay these proceedings pending a final adjudication of the Kansas action because the two disputes involve the same accident, parties, and subject matter. Docket No. 22 at 1–2. Safeco contends that, because the purported conduct and events occurred outside of Colorado and because Kelley is a Missouri citizen, whose car was registered in Missouri and insured under a Missouri policy, the dispute should not be resolved in Colorado. *Id.* at 2.

More specifically, Safeco argues that this Court has discretion to stay the Colorado action pending the outcome of the Kansas litigation and that the Court should exercise its discretion by applying the first-to-file rule, which considers the chronology of the events, the similarity of the parties and issues, and other equitable factors. *Id.* at 3 (citing *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1122 (10th Cir. 2018)). Safeco maintains that the first court to obtain jurisdiction over the case "should have priority and the second court should decline consideration of the action until the

9

proceedings before the first court are terminated.'" *Id.* (citing *Keymark Enterprises, LLC v. Eagle Metal Prods.*, No. 08-cv-0662-REB-MEH, 2008 WL 4787590, at *3 (D. Colo. Oct. 30, 2008) (quoting *Cessna Aircraft Co. v. Brown*, 348 F.2d 689, 692 (10th Cir. 1965))). Safeco states that this Court has not obtained jurisdiction because the "accident and injuries which form the basis of this lawsuit occurred entirely in Kansas." *Id.* at 4. Therefore, under the first-to-file rule, the District of Kansas is a more appropriate forum than the District of Colorado. In the alternative, Safeco argues that, if this Court determines that it obtained jurisdiction before the Kansas court, equitable factors warrant staying this action. *Id.* at 6. Kelley joins Safeco's request that the Court stay the Colorado proceedings pending final judgment in the Kansas action. Docket No. 31 at 12.

Safeco is correct that courts of "coordinate jurisdiction and equal rank" must "be careful to avoid interfering with each other's affairs in order to 'avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Ga.*, 1999 WL 682883, at *2 (10th Cir. Sept. 2, 1999) (unpublished) (quoting *Sutter Corp. v. P & P Indus., Inc.* 125 F.3d 914, 917 (5th Cir. 1997)).

The first-to-file rule applies "when two district courts have jurisdiction over the same controversy, affording deference to the first filed lawsuit." *Lipari v. U.S. Bancorp NA*, 345 F. App'x 315, 317 (10th Cir. 2009) (unpublished); *see also Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982) (recognizing general rule that

"when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case"). The rule is a discretionary doctrine, resting on "principles of comity and sound judicial administration" and is concerned with avoiding duplicative litigation, rulings which impinge on the authority of sister courts, and piecemeal litigation. *Cadle Co v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). As a result, "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Id.*; *accord Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1165 (N.D. Okla. 2010). Courts generally hold that the first-to-file rule requires analysis of three factors: "(1) the chronology of events; (2) the similarity of the parties involved; and (3) the similarity of the issues or claims at stake." *Wakaya*, 910 F.3d at 1124 (citing *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016)).

Here, the two actions were both filed on April 30, 2020. *See* Docket No. 1; Kansas Action, Docket No. 1; *see also* Kansas Action, Docket No. 39 at 4–5 (noting that the matters were filed "simultaneously"). Assuming the first-to-file rule even applies when two cases are filed on the same day, the first *Wakaya* factor, chronology of the events, is neutral. Consideration of the second two factors yields the same conclusion. The parties, issues, and allegations are nearly identical, and there are only minor differences in the claims that Wood has brought before the two courts. This matter includes claims for fraudulent conveyance against Kelley and a Colorado Consumer Protection Act claim against Safeco, which the Kansas Action lacks, while the Kansas

11

Action has a spoliation claim against Safeco that Wood did not bring before this Court. *Compare* Kansas Action, Docket No. 1 *with* Docket Nos. 1, 77. Thus, application of the first-to-file rule does not favor one jurisdiction over another.

The Court next considers other factors that courts in this district weigh in determining whether to grant a stay: (1) the plaintiff's interest in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendant; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Fireman's Fund Ins. Co. v. Steele Street Ltd. II*, No. 17-cv-01005-PAB-SKC, 2019 WL 588190, at * 4 (D. Colo. Feb. 13, 2019) (citing *Springmeadows Condo. Ass'n v. Am. Family Mut. Ins. Co.*, No. 14-cv-02199-CMA-KMT, 2014 WL 7005106, at *1 (D. Colo. Dec. 9, 2014)); *see also String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 05-cv-01934-LTB-KLM, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006).

On the first factor, Wood argues that his interest is best served by resolution of this action in Colorado, since "this action is moving more quickly." Docket No. 41 at 3. While discovery is proceeding in this matter, statistics demonstrate that the case is likely to take longer to try in the District of Colorado than in the District of Kansas. In 2020, civil actions filed in the District of Kansas proceeded to trial in an average of 28.3 months, whereas they proceeded to trial in an average of 33.9 months in the District of Colorado. *See* Judicial Conference of the United States, Judicial Caseload Profile. Moreover, since the last judgeship was created in the District of Colorado, the population of the state has increased by 50 percent. This has resulted in a higher

12

weighted caseload per judgeship in this District. For example, in 2020, the weighted civil case filings per judgeship show that the District of Colorado is the tenth busiest district in the country out of 94 judicial districts, while the District of Kansas ranks 72 out of 94. *Id.* Due to the high weighted case average per judgeship, the Judicial Conference recommends that the District of Colorado receive two new judgeships. This is not to suggest that the District of Kansas does not have a busy docket as well. But the metrics show that proceeding in this case is unlikely to meet Wood's interest in a more expeditious resolution of his claims.

The second and third factors, burden to the defendants and convenience to the Court, are inconclusive. On the second factor, while defendants do not discuss how they might be burdened by proceeding in either district, both Safeco and Kelley argue that, because the events regarding the accident occurred entirely outside of Colorado and resolution requires interpretation of a Missouri insurance policy under Missouri and/or Kansas law, resolution is not appropriate in Colorado. Docket No. 22 at 8–9; Docket No. 31 at 12. On the third factor, the Court does not find it to be inconvenienced.

The remaining two factors, the interests of non-parties and the public's interest, weigh in favor of staying this action. While the cases involve witnesses in both Colorado and Kansas whose interests may be better served by proceeding in one court instead of the other, their collective interest, like the public's, is best served by an expeditious resolution of this dispute and the conservation of judicial resources. These factors considered together lead the Court to conclude that a stay of this matter is proper pending resolution of the Kansas case.

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that Defendant Safeco's Motion to Stay, or in the Alternative, Motion to Dismiss [Docket No. 22] is **GRANTED** in that the Court grants the motion to stay. It is further

**ORDERED** that Defendant Kelley's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction or, in the Alternative, Motion to Stay [Docket No. 31] is **GRANTED in part** and **DENIED in part**.

DATED March 2, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge